IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:25CR00110 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN A. POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| ELYSSIA SANABRIA, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM FOR DEFENDANT |
| Defendant. | ) | ELYSSIA SANABRIA |
| | ) | |

The United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Segev Phillips, Assistant United States Attorney, respectfully requests that the Court use a base offense level of 30 or 32 and reject Sanabria's request for a minor role adjustment. The United States believes that a sentence relying on such calculations would be sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a).

## I. APPLICABLE LEGAL STANDARDS

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted).

After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a).

## II. OFFENSE CONDUCT

Elyssia Sanabria and Thaer Mustafa ran a drug lab and sent their product to people for introduction into prisons. (Presentence Report ("PSR"), ¶ 5). The two communicated with a Chinese source of supply to obtain precursor chemicals to Ohio. (*Id.*). At least one of their customers was a DTO in Texas that introduced drug-soaked papers to prisons. (*Id.*, ¶ 6). Sanabria was central to the operation. She was directly responsible for synthesizing the drugs. (*Id.*, ¶ 8). In fact, when Mustafa was incarcerated, she kept the lab going. (*Id.*). And she was the holder of the bank account where proceeds were deposited. (*Id.*, ¶ 7).

On February 26, 2025, officers executed search warrants at various locations, including a lab on Lorain Road in Fairview Park, Ohio. At that lab, officers located approximately 12.5 kilograms of formed synthetic cannabinoids as well as four large tubs containing a mixture of synthetic cannabinoids still in the chemical conversion process. Chemists that had been brought to the search scene took measurements of the liquid in each container. Those chemists approximated the total volume of the four tubs as 82.372 liters. The weight of water (the most prevalent product in the tub) is one kilogram per liter, for an approximation of 82.372 kilograms.

Representative samples were taken from the bottom, middle, and top layers of each tub. The remainder of the product was set aside for destruction. The sample was sent to the laboratory, which found that the mixture contained 13.2% formed product. That ratio, calculated for the full 82.372 kilograms of mixture, resulted in an approximation of 10.9 kilograms of cannabinoids. (PSR, ¶ 10).




## III. SENTENCING GUIDELINES COMPUTATION

*Base Offense Level*

The PSR and each party arrived at different base offense levels. There is no dispute that at least the 25.8 grams of cocaine, found at an apartment in Cleveland, and the 12,484.3 grams of formed synthetic cannabinoids, found at the drug lab on Lorain Avenue, all should be counted. Together, these account for a converted drug weight of 2,090 kilograms. On their own, this

would result in a base offense level of 30, reflecting a total converted drug weight of at least 1,000 and less than 3,000 kilograms. U.S.S.G. § 2D1.1(c)(5).

In arguing that this court should use a base offense level of 30, Sanabria suggests that the evidence does not support a finding that the relevant conduct established an additional 910 kilograms of converted drug weight, which equates to roughly 5.45 kilograms of synthetic cannabinoids. The calculations for the weight of synthetic cannabinoids in the black tubs was approximately 10.9 kilograms, almost exactly twice the amount needed to reach a base offense level of 32.

Sanabria makes numerous baseless attacks on the government's calculations. For example, she argues that the calculations do not account for differences between the consistency of each tub, while wholly ignoring the described sampling methodology. Moreover, she ignores the fact that the actual finished product was separated from the liquid by weight, thus resulting in a conservative estimate of amount. Thus, sufficient credible evidence would justify a finding of a base offense level of 32 based on that evidence alone.

The PSR also recommends a base offense level of 36, relying on the above calculations and on an approximation of drug weight from the proceeds seized. (PSR, ¶ 11). The government urges the Court to rely on the Guidelines calculations in the plea agreement. However, the Court could easily conclude that the base offense level in this case is 32.

That said, the government does not object to the Court relying on a base offense level of 30 in this case.

*Minor Role*

Sanabria was a central player in the conspiracy and cannot establish that she was a minor participant. She seeks an adjustment under U.S.S.G. § 3B1.2, which "provides a range of

adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, cmt. n.3(A). "The defendant bears the burden of demonstrating [her] minor role by a preponderance of the evidence." *United States v. Sherrill*, 972 F.3d 752, 770 (6th Cir. 2020).

Sanabria was as responsible for the operation of the drug laboratory as Mustafa. Mustafa was incarcerated for almost a year and a half. During that time, Sanabria ran the lab, collected the money, and communicated with Mustafa. Regardless of why she joined the conspiracy, there is no evidence that, once she was involved, she was "substantially less culpable" than Mustafa or anyone else. Further, because none of the drugs sent earlier to Texas were included in the calculations, her attempt to compare herself to "unknown" coconspirators in Texas falls short.

Sanabria's attempt to analogize herself to a pizza worker is wholly without merit. A worker at a pizza shop is not "substantially less culpable" for the operation of the pizza shop if they order the ingredients from China, create the pizza, take payment for the pizza directly into their own bank account, share in the profits of the pizza shop, and run the pizza shop while an alleged owner is incarcerated for a year and a half, during which the worker attempts to smuggle "pizza" into the prison. That is what Sanabria did. She was essentially a co-owner of the operation and took responsibility for it when Mustafa was incarcerated. In short, she cannot establish that she should receive a minor role adjustment.

## IV. CONCLUSION

For the reasons set forth above, and those to be advanced at the sentencing hearing, the United States respectfully requests that, at sentencing, the Court apply a base offense level of 30 or 32 and reject Sanabria's request for a minor-role reduction.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ Segev Phillips

Segev Phillips (OH: 0090144)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3877
Segev.Phillips@usdoj.gov